IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) Criminal No. 07-31   Erie |
| | ) |
| MICHAEL THOMAS JOYCE | ) (18 U.S.C. §§2, 1341 and 1957) |

**INDICTMENT**

The grand jury charges:

INTRODUCTION

1. At all times material to this Indictment, the defendant, MICHAEL THOMAS JOYCE, a resident of Erie County, Pennsylvania, was employed as a judge of the Superior Court of Pennsylvania.

2. At all times material to this Indictment, the defendant, MICHAEL THOMAS JOYCE, insured his automobile, a 2001 Mercedes-Benz E430, with Erie Insurance Group, located in Erie, Pennsylvania.

3. On August 10, 2001, the defendant, MICHAEL THOMAS JOYCE, was involved in a low speed automobile accident near the intersection of West 12th Street and Asbury Road in Millcreek Township, Pennsylvania. Neither medical nor law enforcement personnel were called to the scene.

4. The driver of the other vehicle involved in the August 10, 2001 accident with the defendant, MICHAEL THOMAS JOYCE, was insured with State Farm Insurance.

5. On or about July 2, 2002, the defendant, MICHAEL THOMAS JOYCE, advised State Farm Insurance of his intention to pursue a bodily injury insurance claim relative to the August 10, 2001 automobile accident.

6. On or about September 4, 2002, State Farm Insurance paid the defendant, MICHAEL THOMAS JOYCE, $50,000 in settlement of his insurance claim.

7. On or about August 20, 2002, the defendant, MICHAEL THOMAS JOYCE, advised Erie Insurance Group of his intention to pursue an insurance claim with Erie Insurance Group under the underinsured motorist provision of his own Erie Insurance Group automobile coverage, relative to the August 10, 2001 accident.

8. On or about September 20, 2002, the defendant, MICHAEL THOMAS JOYCE, provided a document titled "Narrative Statement of Damages" to Erie Insurance Group in support of his insurance claim. The document indicated that the defendant, MICHAEL THOMAS JOYCE, was seeking damages for "(1) past pain and suffering, (2) future pain and suffering, and (3) loss of enjoyment of life."

9. On or about November 26, 2002, Erie Insurance Group paid the defendant, MICHAEL THOMAS JOYCE, $390,000 in settlement of his underinsured motorist claim.

### THE SCHEME AND ARTIFICE

10. From in and around August 2001 and continuing thereafter to in and around November 2002, in the Western District

of Pennsylvania, the defendant, MICHAEL THOMAS JOYCE, devised and intended to devise a scheme and artifice to defraud and for obtaining money by means of false and fraudulent pretenses, representations and promises, well knowing at the time that the pretenses, representations and promises were false and fraudulent when made.

11. It was a part of the scheme and artifice that the defendant, MICHAEL THOMAS JOYCE, indicated in his Narrative Statement of Damages that the damages he allegedly suffered had affected his "professional and private life in a very significant way."

12. It was further a part of the scheme and artifice that the Narrative Statement of Damages contained a variety of different claims by the defendant, MICHAEL THOMAS JOYCE, about the alleged impact of the August 10, 2001 accident on his life, including, but not limited to, the following:

    a. For several months following the August 10, 2001, accident, he "experienced constant neck and back pain, excruciating headaches, serious discomfort and had difficulty sleeping.";

    b. In March 2002, he was experiencing a "high state of anxiety due to a combination of not getting all that much better dispite (sic) the length of time following the collision; dealing with a short term memory loss; not

    having a final diagnosis regarding the fasciculations; and not being able to work out, play golf or swim.";

c. The two months leading up to May 3, 2002, were "the longest two months in his life because he believed that he may, in fact, have had Lou Gehrig's disease or some other serious neurologic disease which was life threatening.";

d. Through May, June and July 2002, his pain increased to the point that he could not complete a round of golf;

e. He attempted to play golf five times since the beginning of the 2002 season but was unable to complete a game;

f. He had limited cervical range of motion and, at times, could not hold a coffee cup steady in his right hand;

g. He was physically unable to golf, and could not swim or jog;

h. In the several months leading up to September 2002, he had an inability to keep focused and had problems concentrating;

i. Since the August 10, 2001, accident he had not engaged in scuba diving or taught scuba diving

    and did not renew his scuba teaching certification for 2002;

j. In 2001 he received the Republican nomination for the Supreme Court of Pennsylvania vacancy created by the retirement of Chief Justice John Flaherty;

k. He withdrew from the judicial race for Justice Flaherty's vacant seat shortly after gaining the nomination with the understanding that he would run again in 2003 when the next expected Supreme Court of Pennsylvania vacancy would occur;

l. The impact of the August 2001 accident forced him to forgo his desire to run for a vacant seat on the Pennsylvania Supreme Court in 2003 because there was "no way he could cope with the physical and mental demand of a campaign.";

m. As a result of the accident he had to "eliminate most physical activity from his daily routine."; and

n. The injuries he suffered as a result of the August 2001 accident continued to have a significant effect on every facet of his professional and private life.

13. It was further a part of the scheme and artifice that the defendant, MICHAEL THOMAS JOYCE, falsely claimed to Erie Insurance Group and/or State Farm Insurance that the August 2001 accident rendered him unable to golf at all or unable to complete a full eighteen hole round, and failed to disclose during the pendency of his insurance claims, the following:

   a. From May 2002 to July 2002, he submitted nine full round, eighteen hole, golf scores to the Western Pennsylvania Golf Association, in order to maintain his golf handicap;

   b. He had completed at least two full eighteen hole rounds of golf in Runaway Bay, Jamaica in January 2002;

   c. He had completed at least two full eighteen hole rounds of golf in the Tampa, Florida area, in and around March 2002, including at least one full eighteen hole round at Old Memorial Country Club;

   d. He had completed multiple full eighteen hole rounds of golf at Lakeshore Country Club in Fairview, Pennsylvania from May 2002 to July 2002, separate and apart from those rounds of golf for which he reported his scores to the Western Pennsylvania Golf Association; and

  c. He had completed a full eighteen hole round of golf at Peek'n Peak Resort in Findley Lake, New York, on or about May 5, 2002.

14. It was further a part of the scheme and artifice that the defendant, MICHAEL THOMAS JOYCE, falsely claimed to Erie Insurance Group and/or State Farm Insurance that the August 2001 accident rendered him unable to scuba dive, and failed to disclose during the pendency of his insurance claims that he engaged in scuba diving in Runaway Bay, Jamaica in January 2002.

15. It was further a part of the scheme and artifice that the defendant, MICHAEL THOMAS JOYCE, falsely claimed to Erie Insurance Group and/or State Farm Insurance that he did not renew his scuba diving teaching certification for 2002, and failed to disclose during the pendency of his insurance claims that, in and around December 2001, he did, in fact, via the payment of $144, procure the 2002 renewal of his Instructor Membership with the Professional Association of Diving Instructors (PADI).

16. It was further a part of the scheme and artifice that the defendant, MICHAEL THOMAS JOYCE, falsely claimed to Erie Insurance Group and/or State Farm Insurance that he was either unable to exercise or his exercise activities had been significantly curtailed, and failed to disclose during the pendency of his insurance claims that he had engaged in roller blading on multiple occasions during 2002; and that he exercised at Nautilus

Fitness and Racquet Club in Millcreek Township, Pennsylvania, on numerous occasions from October 2001 to November 2002.

17. It was further a part of the scheme and artifice to defraud that the defendant, MICHAEL THOMAS JOYCE, in support of his insurance claims to Erie Insurance Group and/or State Farm Insurance, falsely claimed that he had received the Republican endorsement and nomination in the 2001 election for a seat on the Pennsylvania Supreme Court in 2002, when in fact he had received no such endorsement or nomination.

18. It was further a part of the scheme and artifice to defraud that the defendant, MICHAEL THOMAS JOYCE, failed to disclose to Erie Insurance Group and/or State Farm Insurance that, on April 8, 2002, he submitted to the Federal Aviation Administration (FAA) an Application for Pilot Medical Certificate (form number 8500-8), wherein he indicated that he had no injuries, physical problems or physical limitations; and had undergone and successfully passed the physical examination required by the Federal Aviation Administration (FAA) prior to the issuance of a private pilot's license.

19. It was further a part of the scheme and artifice to defraud, that the defendant, MICHAEL THOMAS JOYCE, failed to disclose to Erie Insurance Group and/or State Farm Insurance, that from April 2002 to October 2002, he had piloted an airplane on approximately fifty occasions.

## THE MAILINGS

20. The allegations contained in paragraphs 1 through 19 above are realleged and incorporated by reference as if fully set forth herein.

21. On or about the dates specified below, in the Western District of Pennsylvania, the defendant, MICHAEL THOMAS JOYCE, for the purpose of executing the aforesaid scheme and artifice to defraud, and in attempting to do so, did knowingly cause to be delivered by the United States Mail, the mail matter more particularly set forth below, each such use of the United States mail being a separate count of this Indictment:

| Count | Date (on or about) | Sender | Addressee | Mail matter |
|---|---|---|---|---|
| One | 8/26/02 | Michael T. Joyce 3250 West Lake Road Erie, PA 16505 | Attorney Ted G. Miller Erie Insurance Group P.O. Box 1699 Erie, Pennsylvania 16530 | note with enclosure |
| Two | 9/17/02 | Michael T. Joyce 3250 West Lake Road Erie, PA 16505 | Ronald G. Habursky Litigation Specialist Erie Insurance Group 100 Erie Insurance Place Erie, Pennsylvania 16530 | letter with medical specials summary enclosure |
| Three | 11/15/02 | Michael T. Joyce 3250 West Lake Road Erie, PA 16505 | Ronald G. Habursky Litigation Specialist Erie Insurance Group 100 Erie Insurance Place Erie, Pennsylvania 16530 | letter |

All in violation of Title 18, United States Code, Sections 1341 and 2.

## COUNTS FOUR THROUGH NINE

The grand jury further charges:

22. Paragraphs 1 through 21 of this Indictment are realleged and incorporated herein as if fully set forth.

23. On or about the dates specified below, in the Western District of Pennsylvania, and elsewhere, the defendant, MICHAEL THOMAS JOYCE, did knowingly engage and attempt to engage in the following monetary transactions, affecting interstate commerce, in criminally derived property with a value greater than $10,000, which property was derived from specified unlawful activity, in that the defendant, MICHAEL THOMAS JOYCE, engaged in the following transactions, knowing that the funds were derived from a criminal offense, when in fact said funds were derived from mail fraud, each such transaction constituting a separate Count of this Indictment:

| COUNT | DATE (on or about) | MONETARY TRANSACTION |
|---|---|---|
| Four | 11/27/02 | $300,000 initial deposit into a TD Ameritrade individual brokerage account |
| Five | 11/27/02 | $18,058.02 payment to his line of credit account at National City Bank |
| Six | 2/14/03 | $20,000 deposit to Sue Sullo Realtors for the purchase of property located in Millcreek Township, Pennsylvania |
| Seven | 3/10/03 | $18,770.75 payment to Liberty Harley Davidson, 32 East Cuyahoga Falls Boulevard, Akron, Ohio, for the purchase of a motorcycle |

| COUNT | DATE (on or about) | MONETARY TRANSACTION |
|---|---|---|
| Eight | 3/19/03 | $94,537.74 down payment to Select Settlement Inc. for the purchase of property located in Millcreek Township, Pennsylvania |
| Nine | 4/5/04 | $27,500 down payment to Dunkirk Aviation, 3389 Middle Road, Dunkirk, New York, toward the purchase of a 1978 Cessna 206 airplane |

All in violation of Title 18, United States Code, Sections 1957 and 2.

## FORFEITURE ALLEGATIONS

1. The Grand Jury realleges and incorporates by reference the allegations contained in Counts One through Nine of this Indictment for the purpose of alleging criminal forfeitures.

2. As a result of the commission of the violations charged in Counts One through Three of this Indictment, the defendant, MICHAEL THOMAS JOYCE, did acquire proceeds, including bank account balances, that are subject to forfeiture pursuant to Title 28, United States Code, Section 2461(c).

3. As a result of the commission of the violations charged in Counts Four through Nine of this Indictment, the defendant, MICHAEL THOMAS JOYCE, did acquire the following property that was involved in such violations, or is traceable to property involved in such violations, thereby subjecting said property to forfeiture to the United States of America pursuant to Title 18, United States Code, Section 982(a)(1): (a) United States currency, cash equivalents, and bank account balances; (b) real property including, without limitation,

and (c) a 2003 Harley Davidson VIN 1HD1BJY423Y068400.

4. If through any act or omission by the defendant, MICHAEL THOMAS JOYCE, any or all of the property described in paragraphs 2 and 3 above (hereinafter the "Subject Properties"):

a. Cannot be located upon the exercise of due diligence;

      b. Has been transferred, sold to, or deposited with a third person;

      c. Has been placed beyond the jurisdiction of the Court;

      d. Has been substantially diminished in value; or

      e. Has been commingled with other property which cannot be subdivided without difficulty, the United States intends to seek forfeiture of any other property of the defendant up to the value of the Subject Properties forfeitable above pursuant to Title 18, United States Code, Section 982(b)(1).

      A True Bill

*[signature]*
MARY BETH BUCHANAN
United States Attorney
PA ID No. 50254