IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| | ) |
| v. | ) CR. N0. 07-31 Erie |
| | ) |
| MICHAEL THOMAS JOYCE, | ) |

## OPINION and ORDER

Cohill., J.

Presently before the Court is Defendant's "Motion to Transfer Venue Within District" (Doc. 38), and the government's response thereto.

Defendant is a well-known public figure having served as a Judge for the past 22 years, 12 years as a Judge of the Court of Common Pleas of Erie County and 10 years as a Judge of the Pennsylvania Superior Court. Defendant has moved for a transfer of venue within the Western District of Pennsylvania arguing that extensive media coverage in northwestern Pennsylvania (the Erie area), where the Defendant is extremely well known, creates so great a prejudice against him that he will be unable to obtain a fair and impartial trial in the Erie Division of this district. Defendant has submitted numerous media reports as well as a comprehensive media analysis report in support of his motion (Exs. A-1, A-2, A3, & B.) The government opposes the motion.

Defendant's motion to transfer implicates the requirement of Rule 21(a) that the court find that the prejudice against the defendant is so great that the defendant cannot obtain a fair and impartial trial in the district. However, this is not a Rule 21(a) motion for transfer of venue to

another district, but is a Rule 18 motion to transfer within our district.[1] Rule 18 requires that we "must set the place of trial within the district with due regard for the convenience of the defendant and the witnesses, and the prompt administration of justice." Fed.R.Crim.P. 18.

This district has three divisions: Pittsburgh, Erie, and Johnstown. Prior to the 1966 amendment to Rule 18, courts were required to set the place of trial within the division in which the alleged offense was committed. The 1966 amendment operated to vest discretion in the court to fix the trial at any place within the district. The United States Court of Appeals for the Third Circuit has noted that "[w]ith few exceptions, the modern cases require that the petit jurors be drawn from within the state and federal judicial district in which the crime was committed, but they do not compel a narrower geographical focus than that." Zicarelli v. Gray, 543 F.2d 466, 482 (3d Cir. 1976) (*en banc*), *see also* United States v. Wattree, 431 F.3d 618, 621 (8th Cir. 2005) (no right to be tried in a particular division of the district and "district court has broad discretion where within a district the trial is held" (citing United Sates v. Davis, 785 F.2d 610, 616 (8th Cir. 1986))).

---

[1] Federal Rule of Criminal Procedure 21(a) states:

**Rule 21. Transfer for Trial**

**(a) For Prejudice.** Upon the defendant's motion, the court must transfer the proceeding against that defendant to another district if the court is satisfied that so great a prejudice against the defendant exists in the transferring district that the defendant cannot obtain a fair and impartial trial there.

Federal Rule of Criminal Procedure 18 states:

**Rule 18. Place of Prosecution and Trial**

Unless a statute or these rules permit otherwise, the government must prosecute an offense in a district where the offense was committed. The court must set the place of trial within the district with due regard for the convenience of the defendant and the witnesses, and the prompt administration of justice.

2

As portrayed by some of the editorialized reporting provided by Defendant, the indictment in this case accuses the Defendant of using his position as a Judge (following his involvement in an automobile accident) to fraudulently obtain money from insurance companies which often have interests in issues that regularly come before the Superior Court. In addition, some of the media reports stated that ordinary people who submit insurance claims are not treated as favorably as Judge Joyce when they have to file insurance claims, thereby implying that Judge Joyce, was given preferential treatment, regardless of the merits of his claims.

Some of these media reports also noted that it is the ordinary insured who ends up paying higher premiums as a result of insurance companies giving favorable treatment to someone like Judge Joyce. One of the insurance companies involved in this case is Erie Insurance Group, a prominent employer in the City of Erie, with its home office in Erie. According to its website Erie Insurance Group employs more than 2,450 people at its home office. In addition, Erie Insurance Group is an insurer of many residents of northwestern Pennsylvania. Ironically, the building housing the Erie Insurance Group is within sight of the Erie Federal Courthouse.

The media reports submitted by Defendant also include examples wherein they referred to other alleged incidents unrelated to the present indictment involving the Defendant, such as driving the wrong way on a one way street after leaving a tavern and then causing a wreck, parking his automobile in a handicapped parking spot, and failing to recuse himself from a case in which he wrote an opinion favorable to his former business partner and close friend.

The government's opposition to Defendant's motion is well-argued and might prevail were this a question of whether venue should be transferred to another district. The cases the government relies upon involve denials of Rule 21(a) motions to transfer cases outside of the district where the offense was committed. Transferring a case to another district implicates the Sixth Amendment to the Constitution, which states in part, that a defendant is entitled to a trial "by an impartial jury of the State and district wherein the crime shall have been committed, . . . ." While generally the same principles involved in deciding whether to transfer a case to another

3

district are relevant to the decision of where within the district to set the trial, there is no constitutional right to trial within the division where the offense was committed. United States v. Gonzalez, 163 F.3d 255, 259 (5th Cir. 1998), citing U.S. Const. amend VI.

But even if we were denying a Rule 21(a) transfer to another district, we would still face the question of where within this district to set the place for trial. In this regard, we are mindful of our duty to minimize the effects of prejudicial pretrial publicity. "Given the pervasiveness of modern communications and the difficulty of effacing prejudicial publicity from the minds of the jurors, the trial courts must take strong measures to ensure that the balance is never weighed against the accused." Sheppard v. Maxwell, 384 U.S. 333, 362-363, 86 S. Ct. 1507, 1522, 16 L. Ed. 2d 600 (1966), *quoted with approval*, Nebraska Press Ass'n v. Stuart, 427 U.S. 539, 553, 96 S.Ct. 2791, 2800, 49 L.Ed.2d 683 (1976). "Indeed, the Supreme Court has instructed trial courts that '[t]o safeguard the due process rights of the accused, a trial judge has an affirmative constitutional duty to minimize the effects of prejudicial pretrial publicity.'" United States v. Wendelsdore, 2005 WL 1258897, *3 (N.D.Iowa 2005), *quoting* Gannett Co., Inc. v. DePasquale, 443 U.S. 368, 378, 99 S. Ct. 2898, 2904, 61 L. Ed. 2d 608 (1979), *citing* Sheppard ). In Sheppard, the Supreme Court further stated that "'where there is a reasonable likelihood that prejudicial news prior to trial will prevent a fair trial, the judge should continue the case until the threat abates, or transfer it to another county not so permeated with publicity.'" United States v. Wittig, 2005 WL 758605, *2 (D.Kan 2005), quoting Sheppard, 384 U.S. at 362-63.

Several courts have denied Rule 21(a) motions for transfer outside of the district, while allowing a transfer within the district to a different division. In United States v. Addonizio the district court denied defendants' motion to transfer outside the district but *sua sponte* did transfer within the district, stating:

> in view of the concentration of public interest and news coverage in the Newark area, the court is convinced that the jury selection process will be facilitated by the transfer of these proceedings from the Newark to the Trenton vicinage of the district, and that such a transfer will not unduly burden or inconvenience either the defendants or the witnesses.

4

United States v. Addonizio, 313 F.Supp. 486, 494 (D.N.J. 1970). The district court also denied defendants' later motion for retransfer back to Newark based on undue hardship. United States v. Addonizio, 451 F.2d 49, 61 (3d Cir. 1972), *cert. denied*, 405 U.S. 936 (1972). The district court found that any inconvenience to defendants, counsel and witnesses was outweighed by "the probability that the jury process selection [in the transferee division] will be substantially facilitated." Addonizio, 451 F.2d at 61. The defendants appealed the district court's denial of the Rule 21(a) motion to transfer outside the district as well as the denial of the motion to retransfer within the district. The Third Circuit Court found that the district court did not abuse its discretion, and specifically found that the contention that the court's within-district transfer violated Rule 18 was frivolous. Id.

In United States v. Wittig, 2005 WL 758605, *1 (D.Kan 2005), the district court denied defendants' Rule 21(a) motion to transfer venue outside of the district, but also denied the government's motion to designate the place for trial as within the division where the offense occurred, *sua sponte* ordering the case transferred to a different division within the district. The Wittig Court explained that the within-district transfer was warranted because the "news coverage, particularly highly editorialized coverage, has been more extensive" in the division where the crime occurred than in the division to which it was being transferred. Wittig, 2005 WL 758605, *1. The Court further explained that an "intra-district transfer, coupled with juror questionnaires and individualized, sequestered voir dire of all potential jurors, ensures that defendants' case will be tried to a fair an impartial jury and therefore satisfies Constitutional requirements." *Id. See also* United States v. Abrahams, 466 F. Supp. 552, 558 (D. Mass. 1978) (denying a Rule 21(a) motion to transfer outside the district, but *sua sponte* transferring trial within the district.)

United States v. Fekos, Cr. No. 06-00237, a two-defendant case in the Western District of Pennsylvania, was assigned to Judge Kim R. Gibson in the Johnston Division only after all Judges in the Pittsburgh Division recused. One of the defendants moved to have the case transferred back to the Pittsburgh Division for trial arguing that not only were the offenses committed in the Pittsburgh Division, but also transfer would be more convenient for the government, counsel, the parties, and the witnesses. (Motion to Transfer Venue, Aril 4, 2007, Doc. 84). The defendant noted that the only connection to Johnstown was that the case was assigned to a Judge whose office was located in Johnston. His co-defendant opposed the transfer based on negative pretrial publicity and to better provide for the prompt administration of justice. (Reply in Opposition to Codefendant's Motion to Transfer, April 5, 2007, Doc. 85)

Judge Gibson denied the motion to transfer the case to the Pittsburgh Division finding that the inconvenience of having the trial in Johnstown was minimal and did not outweigh the public's and the court's interest in the prompt resolution and administration of the case. (Memorandum Opinion & Order, April 13, 2007, Doc. 88.) While drawing no conclusions about the amount or nature of pretrial publicity, Judge Gibson agreed that "Johnstown Division jurors are generally less likely than Pittsburgh Division jurors to have considered this prosecution prior to *voir dire*. (Doc. 88, at 4.)

In light of the intense public interest in this case and the media coverage in the Erie Division, we are convinced that the jury selection process will be facilitated by the transfer of the trial in this action from the Erie Division to the Pittsburgh Division, and will promote the prompt administration of justice.[2]

We further conclude that this transfer will not unduly burden or inconvenience Defendant or the witnesses. The relatively minor inconvenience to witnesses is outweighed by the overwhelming adverse publicity in the Erie Division that will no doubt continue. An added factor in this case, is that much of the adverse media reports place "the defendant in a negative light on the basis of his past life or events not intrinsic to the crime charged." United States v. Moorhead, 1981 U.S. Dist. LEXIS 9357, *9 (D.V.I. 1981). The Erie Courthouse is just 128 miles from the Pittsburgh Courthouse and connected by Interstate Highways 79 and 279. We

---

[2] The government has provided media circulation statistics that show that the Erie Times-News circulation is heavily concentrated in Erie County, which is just one of the seven counties comprising the Erie Division. A plurality of potential jurors to be summoned from the seven counties of the Erie Division for a petit jury would be from Erie County. The Jury Office reports that for the six trial terms in 2007, on average 36% of the jurors summoned for jury duty were from Erie County. In three of the trial terms the percentage of Erie County jurors was 38%, 39%, and 40%. The government's statistics do not reveal the extent to which media reports about this case have circulated through the internet, thus it is quite possible that persons who do not receive the Erie Times-News, regardless of where they reside, may be a regular readers of the Erie Times-News website. Likewise, we do not know the extent to which media reports about this case have penetrated the other six counties through reports on the internet or their own local papers.

The Erie Division's total population, taken from the government's quickfacts.census.gov website, is approximately 550,180. The Division is comprised of the following seven counties (with their approximate populations): Erie (279,811), Crawford (89,389), Elk (33,179), Forest (6,501), McKean (44,065), Venango (55,488), and Warren (41,742). The Jury Office constructs a qualified pool of jurors from the smaller population of registered voters. The present qualified pool of jurors in the Erie Division from which a jury panel would be randomly chosen is approximately 9,327 persons.

In contrast, in the Pittsburgh Division the present qualified pool of jurors from which a jury panel is chosen is 22,545 persons, selected from a total population base of 2,795,898 in thirteen counties. Thus, not only is there a larger pool of prospective jurors from which to select, but also potential jurors are much less likely to have been exposed to adverse publicity about this case and the Defendant in the Pittsburgh Division.

take judicial notice of the fact that when this Defendant was indicted, there was only brief notice of the indictment in the Pittsburgh news media, but it received a great deal of publicity in Erie.

I do not make this decision lightly. Although I live in the Pittsburgh area, I have traveled to Erie just about every other month since 1989 to preside over trials, conduct status conferences, attend ceremonial events and the like. Pittsburgh attorneys are required to travel to Erie for hearings on their Erie cases.

This is the first case that I have ever ordered transferred from Erie to Pittsburgh, but to preserve the bedrock American principle that a defendant is presumed innocent when he starts his trial, the interests of justice require a transfer in this case. All pretrial matters and any necessary conferences will continue to be held in the Erie Courthouse.

Accordingly, the following Order is hereby entered.

AND NOW, to-wit, this __10th__ day of June 2008, it is hereby ORDERED, ADJUDGED and DECREED that the Defendant's Motion to Transfer Venue Within District (Doc. 38) be and hereby is GRANTED.

IT IS FURTHER ORDERED that this case is transferred to the Pittsburgh Division of the United States District Court for the Western District of Pennsylvania for trial.

*Maurice B. Cohill, Jr.*
Maurice B. Cohill, Jr.
United States District Court Judge

cm/ecf:    counsel of record

8