IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | |
| v. | ) | CR. N0. 07-31 Erie |
| | ) | |
| MICHAEL THOMAS JOYCE | ) | |

## OPINION and ORDER

Cohill., J.

Presently before the Court are Defendant's "Motion to Dismiss and/or For Judgment of Acquittal" and Defendant's "Motion for New Trial", and the government's responses thereto. For the reasons that follow we will deny Defendant's motions.

### I. Motion to Dismiss and/or For Judgment of Acquittal

Following a jury trial the Defendant was found guilty of two counts of mail fraud in violation of 18 U.S.C. § 1341, and six counts of money laundering in violation of 18 U.S.C. § 1957. The Defendant moves to dismiss the six counts alleging violations of 18 U.S.C. § 1957. In the alternative, Defendant moves for judgment of acquittal on these counts. Defendant's argument is that the government failed to prove an essential element of a section 1957 offense.

The money laundering counts that Defendant was convicted of concern the following monetary transactions: a $300,000 initial deposit into a TD Ameritrade individual brokerage account; an $18,058.02 payment to Defendant's line of credit account at National City Bank; a $20,000 deposit to Sue Sutto Realtors for the purchase of property located in Millcreek Township; an $18,770.75 payment to Liberty Harley Davidson, 32 East Cuyahoga Falls Boulevard, Akron, Ohio, for the purchase of a motorcycle; a $94,537.74 down payment to Select Settlement Inc. for the purchase of property located in Millcreek Township, Pennsylvania; a $27,500 down payment to Dunkirk Aviation, New York, toward the purchase of a 1978 Cessna 206 airplane.

The Defendant argues that the government failed to prove that the financial institutions through which the transactions were conducted engaged in or had other activities which affected interstate commerce. Therefore, he argues that the government has failed to establish an essential element of the offense and, because this element is jurisdictional, that this court has no jurisdiction over the money laundering offenses.

Because the Defendant challenges the sufficiency of the evidence we view "the record in the light most favorable to the prosecution to determine whether any rational trier of fact could have found proof of guilt beyond a reasonable doubt based on the available evidence." United States v. Silveus, 542 F.3d 993, 1001 (3d Cir. 2008) (citing United States v. Smith, 294 F.3d 473, 476 (3d Cir.2002) & United States v. Wolfe, 245 F.3d 257, 262 (3d Cir.2001)). The government's burden to establish the interstate commerce element requires only that the government prove a minimal effect, in any way or degree, on interstate commerce. We conclude that the government has met its minimal burden.

The government introduced the following evidence regarding TD Waterhouse: (i) that TD Waterhouse is located in New York and that the Defendant resides in Pennsylvania, (ii) that the Defendant's TD Waterhouse Money Market account is insured by the Federal Deposit Insurance Corporation ("FDIC"); and (iii) that TD Waterhouse is a member of the New York Stock Exchange. This evidence was sufficient to show that TD Waterhouse engaged in interstate commerce, either by engaging in a monetary transaction between states, by being FDIC insured, or by being a member of the New York Stock Exchange.

The government also introduced evidence that all of the transactions set forth in the money laundering accounts were connected in one way or another with the TD Waterhouse account. Defendant initially deposited settlement funds into his National City Bank account and then wrote a $300,000 check from that account in order to deposit funds into a TD Waterhouse account. The $20,000 down payment for property, the $94,537.74 down payment for property, the $27,500 down payment for an airplane, and the $18,770.75 payment for a motorcycle were

2

paid for with checks drawn from Defendant's TD Waterhouse account. The government also introduced the following additional evidence: (i) that the $18,058.02 payment to his line of credit account at National City Bank was negotiated through National City Bank in Cleveland, Ohio; and (ii) that the payments for a motorcycle (Ohio) and an airplane (New York) involved interstate monetary transactions between Pennsylvania and another state. Given this evidence, we find that a rational juror could have concluded that the interstate commerce element of the money laundering counts was established. We will therefore deny Defendant's motion to dismiss and motion for judgment of acquittal.

## II. Motion for a New Trial

Defendant has filed a Motion for a New Trial pursuant to Federal Rule of Criminal Procedure 33, arguing that the jury's verdict was against the weight of the evidence, and that the admission of Defendant's financial transactions unrelated to the money laundering counts were highly prejudicial.

"Federal Rule of Criminal Procedure 33 provides that "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed.R.Crim.P. 33. "Unlike an insufficiency of the evidence claim, when a district court evaluates a Rule 33 motion it does not view the evidence favorably to the Government, but instead exercises its own judgment in assessing the Government's case." United States v. Johnson, 302 F.3d 139, 150 (3d Cir.2002). "A district court can order a new trial on the ground that the jury's verdict is contrary to the weight of the evidence only if it 'believes that "there is a serious danger that a miscarriage of justice has occurred-that is, that an innocent person has been convicted."'" Id. (quoting United States v. Santos, 20 F.3d 280, 285 (7th Cir.1994), quoting United States v. Morales, 902 F.2d 604, 606 (7th Cir.1990)). We cannot say that the verdict was against the weight of the evidence.

The government's theory of the case was that the Defendant was involved in a low-speed minor accident that could not have caused the injuries he claimed he suffered. He thereafter

3

submitted a Narrative Statement of Damages to the Erie Insurance Group in which he falsely asserted claims regarding his mental and physical pain as well his ability to engage in or pursue certain recreational and professional activities, all with an eye towards gaining funds that he knew he was not entitled to. In that narrative, which was written by the Defendant in the third person and submitted by the Defendant himself, he concluded by stating:

> Certainly a review of this narrative only gives a small glimpse of the past, present and future pain, suffering and loss of enjoyment of life Judge Joyce has and will experience. In short, there has not been a day since the accident that Judge Joyce has been pain free. The permanent injuries he sustained in the accident have had and continue to have a significant effect on every facet of his professional and private life.

(Narrative Statement of Damages, at 18.)

The government supported its case by introducing evidence to refute the statements in the narrative submitted to the insurance company. This evidence included medical evidence showing that whatever ailments Defendant suffered were not caused by or exacerbated by the accident. The medical evidence also tended to show that Defendant had a tendency to place undue attention on his health. The government also introduced evidence of Defendant's conduct in engaging in activities that would undermine his claim that he was injured as much as he claimed. Significantly, the government showed that the Defendant successfully learned to fly airplanes and took numerous flights during the time he claimed to be suffering from near debilitating ailments. The government also introduced evidence comparing Defendant's statements to various doctors about his health with his contemporaneous self-report of his physical and mental condition to the Federal Aviation Administration doctors. The government also introduced evidence to show that the insurance companies issued settlement checks to Defendant in the absence of complete information and because he was a Judge, they relied on his narrative statement of damages and did not conduct an independent investigation. This is merely an example of the kind of evidence the government introduced and is far from complete.

In contrast, the Defendant's position was that due to his pre-existing physical condition he was more susceptible to injury in a low speed accident than another, healthier person. The testimony showed that he in fact underwent a cervical fusion some years prior to the accident. His evidence also was aimed at showing that he did have injuries, that he complained of numerous symptoms consistent with injuries from the accident, and that he did reduce his activities or took other measures to compensate for the effect of his injuries on his daily living.

The Defendant also attempted to show that his claims were evaluated properly and that neither insurance company felt that their respective settlements were improper. In addition, the Defendant, relying on the government witnesses as well as his own witnesses, attempted to establish that he in fact was hyper-sensitive to his physical condition and had a lengthy history of over-reacting to minor or perceived symptoms. This evidence was primarily aimed at showing that the government could not establish that the Defendant had the requisite intent to defraud. The testimony of lay and expert witnesses and government and defense witnesses supported the theory that the Defendant was hypersensitive to his physical condition. The jury could have, but apparently did not, conclude that the Defendant honestly believed that he was injured in the accident in the manner he stated and therefore had no intent to defraud the insurance companies.

The jury heard testimony from former wives and fiancés, judges and lawyers, insurance executives, flight instructors, and several medical doctors. The Defendant's conduct came to light as a result of his ex-fiancé sending an anonymous letter to various government agencies. Her testimony could lead one to believe that it was offered as revenge against the Defendant. However, whether she acted out of revenge or out of a sense of civic duty, it was ultimately an issue for the jury to decide whether that testimony was credible. In other words, it was possible for the jury to believe that while she may have been a vindictive, scorned ex-fiancé, she also accurately and credibly reported that the Defendant engaged in criminal conduct. No doubt the fact that agents of the Federal Bureau of Investigation and the Internal Revenue Service took notice and investigated her allegations lent additional credence to her testimony.

5

Several times throughout the trial there were tense and combative episodes between counsel and witnesses. There was consistent testimony from some witnesses interviewed by agents of the government that although the agents were polite, the witnesses nonetheless felt intimidated by the agents. There were judges and doctors testifying that government agents were mischaracterizing events, while the agents testified that the doctors and judges were mis-remembering events.

There is no doubt that this was a difficult case for the jury to consider. Counsel for both sides did an excellent job of focusing the jury's attention on relevant evidence. In its wisdom the jury returned a verdict of guilty. In light of all the evidence and testimony we conclude that the jury's verdict was not against the weight of the evidence. We also find no error due to the admission of Defendant's financial transactions unrelated to the money laundering counts. To the extent that this evidence was prejudicial it was outweighed by the weight of the other evidence that supports the jury's verdict. Accordingly, we will deny Defendant's motion for a new trial.

The following Order is hereby entered.

AND NOW, to-wit, this __5th__ day of March 2009, it is hereby ORDERED, ADJUDGED and DECREED that Defendant's "Motion to Dismiss and/or For Judgment of Acquittal" (Doc. 104) and Defendant's "Motion for New Trial" (Doc. 106) be and hereby are DENIED.

*Maurice B. Cohill, Jr.*
Maurice B. Cohill, Jr.
United States District Court Judge

cm/ecf:     counsel of record